UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
RAYMOND NG,

                Plaintiff,

  -against-                            **MEMORANDUM AND ORDER**
                                              07-CV-5434 (RRM)(VVP)

HSBC MORTGAGE CORP., HSBC USA INC.,
QI ZHAO, and DATIUS WONG,

                Defendants.
----------------------------------------------------------X

**MAUSKOPF, United States District Judge:**

       Plaintiff Raymond Ng ("Ng" or "plaintiff") brings this action against defendants HSBC Mortgage Corp. and HSBC USA (collectively "HSBC"), and individual bank employee defendants Qi Zhao ("Zhao") and Datius Wong ("Wong") (collectively "defendants") in connection with a home mortgage transaction. Plaintiff has asserted various state and federal claims against defendants, including claims for alleged non-disclosures, false statements, discrimination, fraud, usury, and violations of the banking law. Currently before the Court is defendants' motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure as to the remaining claims in this action.[1] For the reasons stated below, defendants' motion for summary judgment is DENIED as to Ng's claim based on 15 U.S.C. § 1638(b), and GRANTED as to all other claims.

---

[1] As discussed more fully below, the Court previously dismissed the majority of claims pled in this action.

# BACKGROUND[2]

## I. Factual Background

This action concerns Ng's acquisition of a residential property located at 2041 79th Street in Bay Ridge, Brooklyn (the "Property"). (Defs.' 56.1 Stmt. ¶ 4; Compl. ¶ 13.) In or around November 2006, plaintiff applied to HSBC in order to obtain financing for the Property, which cost $555,000. (Defs.' 56.1 Stmt. ¶ 5.) He anticipated paying a $56,000 down payment, and sought a loan in the amount of $499,000. (Defs.' 56.1 Stmt. ¶ 6; Compl. ¶ 15.) To that end, he arranged a meeting with Zhao, an HSBC employee.

Ng alleges that Zhao informed him that he could arrange two loans: one for $417,000 at an interest rate of 6.125% (the "First Mortgage"), and one for $82,500 at a fixed interest rate of 8.5% (the "Second Mortgage").[3] (Compl. ¶¶ 17-18.) HSBC sent plaintiff a letter of commitment for the First Mortgage in the amount discussed. (Defs.' 56.1 Stmt. ¶ 13.) It is undisputed that nothing was immediately memorialized with respect to the figures allegedly discussed for the Second Mortgage, and that plaintiff did not submit an application for a Second Mortgage in the amount allegedly discussed. (*Id.* ¶ 15.)

---

[2] Unless otherwise noted, citations to the parties' Rule 56.1 statements concern factual assertions that are admitted or are deemed admitted because they were not contradicted by citations to admissible evidence. *See Giannullo v. City of N.Y.*, 322 F.3d 139, 140 (2d Cir. 2003) ("If the opposing party . . . fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted."). Plaintiff's 56.1 Statement does not comport with Local Civil Rule 56.1(b). Ordinarily, failure to comply with the Local Rules regarding 56.1 Statements would result in the material facts in the non-complying party's Statement being deemed admitted for the purposes of deciding the pending summary judgment motion. *See* Local Civil Rule 56.1(c). A district court, however, "has broad discretion to determine whether to overlook a party's failure to comply with local court rules." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) (citations omitted); *see also Rateau v. City of N.Y.*, No. 06-CV-4751 (KAM)(CLP), 2009 U.S. Dist. LEXIS 90112, at *2 n.1 (E.D.N.Y. Sept. 29, 2009) (exercising discretion in reviewing the admissible record evidence in determining whether proposed undisputed facts were disputed); *Robinson v. Keyspan*, No. 03-CV-4796 (FB)(LB), 2005 U.S. Dist. LEXIS 27057, at *2 n.2 (E.D.N.Y. Nov. 9, 2005) (same). Accordingly, for the purposes of this motion, plaintiff's statement of undisputed facts is treated as undisputed only where it is not controverted by admissible evidence in the record.

[3] Plaintiff alleges that Zhao, against plaintiff's wishes, added $500 to the total mortgage amount in order to charge him a higher rate of interest, and would not lower the total borrowed amount from $499,500 to the $499,000, stating "$500 is not going to make a difference [to the interest rate], and the extra amount will be good for your Home Equity Line of Credit because it will increase your home equity." (Compl. ¶ 19.)

Plaintiff subsequently signed a Home Equity Line Agreement with HSBC in connection with the Second Mortgage, which stated that the Second Mortgage would have a principal loan amount of $82,500, and that it would be an adjustable rate mortgage ("ARM"). (*Id.* ¶¶ 22-23, 33-34; *see also* Pl.'s Aff. re: Mot. for Summ. J. Ex. 3 (Request for Admissions ("RFA")[4]) (Doc. No. 98-3).) Indeed, Ng has conceded that he was aware of those very terms at the closing. (Defs.' 56.1 Stmt. ¶¶ 22-23; Compl. ¶¶ 19, 50.) Plaintiff's attorney, Norman Lau Kee, reviewed the loan documents signed by Ng, and signed the First Mortgage as a witness to his execution, which was then notarized by a notary public. (Defs.' 56.1 Stmt. ¶¶ 18-19; Decl. re: Mot. for Summ. J. ("Liew Decl.") (Doc. 99) Ex. A.) However, in deposition testimony, Ng contends that he is unable to tell whether or not the signatures on the mortgage documents are his own. (Defs.' 56.1 Stmt. ¶ 7.)

Subsequent to the execution of the loan documents relating to the First and Second Mortgages and the sale of the Property, Ng noticed that his monthly invoices for the Second Mortgage were higher than he anticipated, and that his monthly payments were not fixed. (Compl. ¶¶ 17, 21-22.) He called HSBC, where a service department employee informed him that he agreed to those terms in writing and would have to speak with a loan officer if he desired a fixed rate mortgage. (*Id.* ¶ 24.) Ng was subsequently told by HSBC's Special Loans Department that his interest rate was 9.75%, rather than the original 8.5%, because his "Loan-to Value (LTV) Ratio" was 95.8%.[5] (*Id.* ¶ 25.)

---

[4] Defendants' Request for Admissions was served on October 15, 2008. (Pl.'s Aff. re: Mot. for Summ. J. ("Zarlock Decl.") Ex. 3 (Doc. No. 98-3).) Plaintiff failed to respond to defendants' RFA on or before November 17, 2008 as directed by the Court. (*See* Order (Doc. No. 47), at 7). Thus, they are deemed admitted as a matter of law. Fed. R. Civ. P. 36(a)(3).

[5] The Special Loans Department informed Ng that loans with an LTV under 90% are entitled to a 8.99% interest rate, loans with an LTV below 80% are entitled to an interest rate of 7.99%, and loans with an LTV at 90% or higher carry an interest rate of 9.75%. (Compl. ¶ 26.)

Ng contacted Wong, an employee in HSBC's Chinese Mortgage Department Head Office, who informed him that since he signed the agreements at the closing it was too late to adjust the rate. (*Id*. ¶¶ 29-30.) Ng noticed another disparity on a document shown to him by Wong entitled "Funding Detail," which listed the Property's purchase price as $521,250.00 instead of $555,000. (*Id*. ¶¶ 31-32; Pl.'s 56.1 Cntrstmt. ¶ 10.) Ng subsequently spoke with an HSBC underwriter, who informed him that he signed a Home Equity Line of Credit ("HELOC") Application on December 3, 2006, which listed the loan amount for the second mortgage as $82,500, and incorrectly listed the purchase price as $521,250.00. (Compl. ¶¶ 33-38.)

In response to plaintiff's complaints, HSBC modified the interest rate on the Second Mortgage, fixing it at 8.5% and granted him a refund. (Defs.' 56.1 Stmt. ¶ 49.) Plaintiff has not made any payments on the Second Mortgage since 2007. (*Id*. ¶¶ 18-19.)

## II.     Procedural Background

On December 15, 2009, Magistrate Judge Pohorelsky issued a Report and Recommendation ("R&R") (Doc. No. 73), recommending that the Court grant the majority of defendants' motion for judgment on the pleadings. The R&R recommended that plaintiff's fourteen causes of action be dismissed, with two exceptions: plaintiff's claim under New York General Business Law ("GBL") § 349 and plaintiff's claim alleging unconscionability. (R&R at 27, 36.) This Court adopted Judge Pohorelsky's R&R by Memorandum and Order dated March 10, 2010 (Doc. No. 79). However, the Court clarified that, to the extent plaintiff had expressly stated a cause of action based on subsections apart from 15 U.S.C. § 1635 of TILA, such claims also survived defendants' motion for judgment on the pleadings. (Doc. No. 79, at 3-4.) Currently before the Court is the defendants' motion for summary judgment with respect to the unconscionability, GBL, and TILA claims.

## **STANDARD OF REVIEW**

Summary judgment is appropriate when the pleadings, depositions, interrogatories, admissions, and affidavits demonstrate that there are no genuine issues of material fact in dispute and that one party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In deciding a summary judgment motion, a district court must draw all reasonable inferences in favor of the nonmoving party. *See id*. at 249 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)); *Castle Rock Entm't, Inc. v. Carol Publ'g Grp., Inc.*, 150 F.3d 132, 137 (2d Cir. 1998). The court must not "weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2007) (quoting *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996)). Any evidence in the record of any material fact from which an inference could be drawn in favor of the non-moving party precludes summary judgment. *See Castle Rock Entm't*, 150 F.3d at 137.

Once the movant has demonstrated that no genuine issue of material fact exists, then "the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)) (emphasis in original). However, there must exist more than mere "metaphysical doubt as to the material facts" to defeat a summary judgment motion. *Id*. at 586. Instead, the non-moving party must present "concrete evidence from which a reasonable

juror could return a verdict in his favor." *Anderson*, 477 U.S. at 256. Only disputes over material facts "that might affect the outcome of the suit under the governing law" will properly preclude the entry of summary judgment. *Id*. at 248; *see also Matsushita*, 475 U.S. at 586.

## DISCUSSION

### I. Requests for Admission

Before turning to the merits of defendants' motion, the Court must address the status of the summary judgment records, specifically, plaintiff's request to withdraw certain admissions upon which defendants rely in making this motion. It is undisputed that plaintiff failed to submit a timely response to defendants' Request for Admissions ("RFA"). Under Federal Rule of Civil Procedure 36(a), a matter set forth in an RFA is deemed admitted unless, within thirty days of service of the requests, the party requesting admission receives an answer or objection to the request. As a result, Judge Pohorelsky found that: "[t]he matters in the defendants' Request for Admissions are therefore 'conclusively established' for purposes of this action unless and until a motion is granted permitting withdrawal." (Order Granting in Part and Denying in Part Mot. for Discovery (Doc. No. 47) at 7.)

However, Rule 36(b) of the Federal Rules of Civil Procedure provides that a court:

> may permit the withdrawal or amendment [of a Rule 36(a) admission] when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice that party in maintaining the action or defense on the merits.

The language of the rule is permissive. Thus, even if a party satisfies the two criteria described by the rule, the decision whether to permit withdrawal remains within the sound discretion of the court. *Donovan v. Carls Drug Co.*, 703 F.2d 650, 652 (2d Cir. 1983); *Local Union No. 38 Sheet Metal Workers' Int'l Ass'n v. Tripodi*, 913 F. Supp. 290, 294 (S.D.N.Y. 1996). The Second

Circuit has noted that, in making this determination, a trial court should be cognizant of the underlying policy of Rule 36, which is "to narrow issues and speed the resolution of claims." *Donovan*, 703 F.2d at 652.

Plaintiff now requests, more than two years after Judge Pohorelsky deemed the RFA admitted, that the Court deem his responses timely filed, thereby permitting withdrawal of his prior admissions. The Court initially notes two defects in the way in which plaintiff has requested withdrawal. First, Ng's request is belatedly set forth in his opposition papers in contravention of Federal Rule of Civil Procedure 36(b), which stipulates that "a matter admitted under this rule is conclusively established unless the court, *on motion*, permits the admission to be withdrawn or amended." *Id.* (emphasis added). Second, Ng provides no explanation for his failure to respond to the RFA in a timely fashion. This Court joins those courts that have held that relief under Rule 36(b) is unavailable to a party that has inexcusably failed to comply with the requirements set forth by Rule 36(a). *See, e.g., Sea-Land Serv., Inc. v. Citihope Int'l, Inc.*, 176 F.R.D. 118, 122 n.10 (S.D.N.Y. 1997); *see also Baker v. Dorfman*, No. 99 Civ. 9385 (DLC), 2000 WL 420551, at *6 (S.D.N.Y. Apr. 17, 2000); *O'Bryant v. Allstate Ins. Co.*, 107 F.R.D. 45, 48 (D. Conn. 1985) (noting that granting relief pursuant to Rule 36(b) absent excusable neglect in failing to respond essentially obviates Rule's 30-day time limit); *SEC v. Thrasher*, No. 92 Civ. 6987 (JFK), 1996 WL 460148, at *1 (S.D.N.Y. Aug. 13, 1996) (internal citation omitted) (deeming RFA admitted where delinquent party "proffer[ed] no meaningful explanation for his tardiness or for his failure to seek more time from the court to meet his obligations under Rule 36").

Moreover, even overlooking these infirmities and assuming, *arguendo*, that plaintiff has satisfied the first of the two requirements stipulated by Rule 36(b), the Court finds that

defendants would be prejudiced if the Court admitted plaintiff's responses at this late stage. Discovery has closed, and permitting the amended answers more than two years after the initial admissions would deprive defendants of the ability to conduct additional discovery concerning those answers. *See SEC v. Batterman*, No. 00 Civ. 4835 (LAP) 2002 WL 31190171, at *7 (S.D.N.Y. Sept. 30, 2002); *Weinberger v. Provident Life & Cas. Ins. Co.*, No. 97 Civ. 9262 (JGK) (HBP), 1999 WL 225537, at *2 (S.D.N.Y. Apr. 19, 1999). This concern is all the more salient where, as here, defendants have relied on those admissions in their motion for summary judgment, which has been fully briefed.

Plaintiff argues that his new responses are consistent with prior testimony, which is patently not the case, and insists that he "has found other evidence that a reasonable jury would find disputes them [sic]," without further explaining this evidence. (Pl.'s Mem. in Opp. to Mot. for Summ. J., at 1.) Notwithstanding his assertions to the contrary, Plaintiff's proposed denials are in direct contradiction with his own prior deposition testimony and sworn affidavits submitted by defendants. *See Baker v. Dorfman*, No. 99 Civ. 9385, 2000 WL 420551, at *6 (S.D.N.Y. Apr. 17, 2000) (denying application to submit belated response to request for admissions because movants failed to show that their denials would be truthful); *see also Mut. Serv. Ins. Co. v. Frit Indus., Inc.*, 358 F.3d 1312 (11th Cir. 2004) (finding that court properly denied motion to withdraw admissions when doing so was simply an attempt to change position in litigation, thus causing prejudice to the opposing party); *Russell v. Acme-Evans Co.*, 51 F.3d 64, 67-68 (7th Cir. 1995) ("Where deposition and affidavit are in conflict, the affidavit is to be disregarded unless it is demonstrable that the statement in the deposition was mistaken . . . ."). Nor does plaintiff point to any new evidence to suggest that his admissions were somehow incorrect or mistaken.

8

"Although an admission should ordinarily be binding on the party who made it, there must be room in rare cases for a different result, as when an admission no longer is true because of changed circumstances or through honest error a party has made an improvident admission." 8A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 2264 (3d ed. 2011). This is not that exceptional case. In the present circumstances, Ng has offered no justification whatsoever for his failure to comply with Rule 36. Indeed, his failure to respond to the FRA is merely one of plaintiff's "persistent discovery failings." (*See* Order Granting in Part and Denying in Part Mot. for Discovery (Doc. No. 47) at 7). *Compare Printy v. Crochet & Borel Servs.*, 196 F.R.D. 46, 50 (E.D. Tex. 2000) (allowing withdrawal where default in responding to RFA was not attributable to "failure to cooperate in discovery," and where plaintiffs "acted responsibly and timely throughout this matter") *with In re Fisherman's Wharf Fillet, Inc.*, 83 F. Supp. 2d 651, 661 (E.D. Va. 1999) (finding no reason to justify granting motion to withdraw admissions, as points urged in support of motion were not recently discovered or previously unknown). Plaintiff has had clear notice, for more than two years, of defendants' reliance on his admissions, yet nonetheless allowed discovery to lapse without making any motion to withdraw the previous admissions despite Judge Pohorelsky's explicit reminder to do so if he desired. *See also In re S.W. Bach & Co.*, No. 07 Civ. 11569, 2010 WL 681000, at *3 (Bankr. S.D.N.Y. Feb. 24, 2010) (noting that the defendant's "persistent delays" in discovery did not merit withdrawing its admissions).

In any event, "[t]he court is not required to make an exception to Rule 36 even if both the merits and prejudice issues cut in favor of the party seeking exception to the rule." *Donovan*, 703 F.2d at 652; *see also In re Ladouceur*, No 95 Civ. 271(RSP), 1996 WL 596718, at *3-5 (N.D.N.Y. Oct. 15, 1996) (noting that the court has the discretion to disregard lack of prejudice

and deem the statements admitted "even though the result may seem harsh") (internal citation omitted). Accordingly, the Court, in the exercise of its discretion, declines to relieve plaintiff from the admissions resulting from his untimely responses, and those admissions will be considered as such for purposes of this motion.

## II. NYGBL § 349

Ng alleges that defendants violated New York's Deceptive Practices Act, General Business Law § 349, through various misrepresentations amounting to fraud. Section 349 makes it unlawful to engage in "deceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of service in [New York]." N.Y. Gen. Bus. Law § 349(a). It provides a cause of action to "any person who has been injured by reason of any violation" of the Act, and provides for the recovery of actual damages. *Id.* § 349(h). A consumer asserting injury under the Act must show: (1) a "consumer-oriented" practice that was (2) materially misleading or deceptive, and (3) that the plaintiff suffered an injury as a result. *Champion Home Builders Co. v. ADT Sec. Servs., Inc.*, 179 F. Supp. 2d 16, 27 (N.D.N.Y. 2001). "The typical violation contemplated by the statute involves an individual consumer who falls victim to misrepresentations made by a seller of consumer goods usually by way of false and misleading advertising." *Genesco Entm't v. Koch*, 593 F. Supp. 743, 751 (S.D.N.Y. 1984). "The statute was meant to empower consumers; to even the playing field in their disputes with better funded and superiorly situated fraudulent businesses. It was not intended to supplant an action to recover damages for breach of contract between parties to an arm's length contract." *Teller v. Hayes, Ltd.*, 630 N.Y.S.2d 769 (App. Div. 1995).

For the conduct at issue to be consumer-oriented, it must have a broad impact on consumers at large. *See, e.g.*, *Exxonmobile Inter-America, Inc. v. Advanced Info. Eng'g Servs,*

10

*Inc.*, 328 F. Supp. 2d 443, 447-49 (S.D.N.Y. 2004); *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 25 (1995). "Private contract disputes, unique to the parties . . . would not fall within the ambit of the statute." *Vitolo v. Mentor H/S, Inc.*, 426 F. Supp. 2d 28, 24 (E.D.N.Y. 2006) (internal quotation marks and citation omitted); *see also Denenberg v. Rosen*, 897 N.Y.S.2d 391, 396 (App. Div. 2010) (noting that "this is essentially a private dispute among the parties . . . rather than conduct affecting the consuming public at large"); *Sec. Mut. Life Ins. Co. v. DiPasquale*, 724 N.Y.S.2d 594, 594 (App. Div. 2001) (finding a claim under § 349 unviable because it "essentially alleges a private contract dispute . . . unique to the parties, rather than conduct that affects the consumers at large").

The complaint here focuses on the losses to Ng as a result of the higher-than-anticipated payments demanded by the mortgage to which he himself agreed. Since "the gravamen of the complaint must be consumer injury or harm to the public interest," and plaintiff has merely alleged harm to himself, the claim must fail. *Azby Brokerage, Inc. v. Allstate Ins. Co.*, 681 F. Supp. 1084, 1089 n.6 (S.D.N.Y. 1988). Indeed, Ng's only argument in opposition is that HSBC's conduct might possibly have been directed at the consuming public in general, and thus similar harm might conceivably come to other consumers. However, he has utterly failed to provide any evidence beyond his own, and his allegation of broader public harm is based solely on conjecture and speculation.

Moreover, a deceptive act is one that is "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Oswego*, 85 N.Y.2d at 26. "The rule imposes an objective standard by taking into account what a reasonable consumer would do under the plaintiff's particular circumstances. There can be no claim for deceptive acts or practices, however, when the alleged deceptive practice was fully disclosed." *Watts v. Jackson Hewitt Tax Serv. Inc.*, 579

11

F. Supp. 2d 334, 346 (E.D.N.Y. 2008); *see also Shovak v. Long Island Commercial Bank*, 858 N.Y.S.2d 660, 663 (App. Div. 2008). Here, the alleged deceptive acts were fully disclosed to Ng in the terms of his loan agreement. (Defs.' 56.1 Stmt. ¶¶ 22, 23, 33-35.) He has acknowledged that he knew the interest rate set forth in the loan documents for the Second Mortgage, and signed them nonetheless because he was eager to purchase the Property in question. (*Id*. ¶ 33). He was represented by counsel, who himself signed the documents as a witness to plaintiff's execution. (*Id*. ¶¶ 18-19.) Plaintiff has been deemed to have admitted signing the loan documents due to his failure to respond to defendants' RFA. (*Id*. ¶ 27 n.1.)

In addition, because Ng's signatures on the documents in question were notarized, their genuineness is presumed, and plaintiff's equivocal, and wholly-self serving response on the simple question of whether the signature was his simply does not create a question of fact. *Feehan v. Feehan*, No. 09 Civ. 7016 (DAB) (THK), 2010 WL 3734082, at *9 (S.D.N.Y. July 26, 2010). While it is true that handwriting identification is generally a factual question, "to survive summary judgment, the party contesting the signature's validity must submit sufficient evidence to allow a reasonable juror to conclude that those arguments have merit." *Id*. at *9 (citing *Pent-R-Books*, 538 F.2d 519, 531 (2d Cir. 1976) ("[w]here it is apparent that two handwriting specimens are from the same hand, the mere assertion they differ is not sufficient to raise a question of fact for trial")); *Orix Fin. Servs., Inc. v. Thunder Ridge Energy, Inc.*, No. 01 Civ. 4788 (RJH)(HBP), 2006 WL 587483, at *20-21 (S.D.N.Y. Mar. 8, 2006) (finding that witness who submitted only a "conclusory affidavit, stating that she did not sign the guaranty bearing her name," failed to create triable issue of fact). Here, plaintiff simply states that the signatures might or might not be his own, thus failing to create a genuine issue of material fact as to whether he signed the loan documents. Since plaintiff acknowledges that he knew of the terms

of the loan and was represented by counse, a reasonable jury could not find that he was deceived by HSBC when he agreed to those same terms at the closing.

For all of these reasons, plaintiff's claim under GBL § 349 is DISMISSED

### III. Unconscionability

Plaintiff seeks a declaration by this Court that the Second Mortgage is void and unenforceable on the grounds that the transaction was unconscionable under New York common law. (Compl. ¶¶ 178, 193.) Defendants in opposition have asserted that unconscionability is improperly asserted here as a means of obtaining affirmative relief, and that plaintiff cannot adequately show procedural and substantive unconscionability.

**A.** <u>Unconscionability as Affirmative Relief</u>

Under New York law, unconscionability is an affirmative defense to the enforcement of a contract. *See, e.g.*, *Travelers Ins. Co. v. Broadway W. St. Assocs.*, 164 F.R.D. 154, 158 (S.D.N.Y. 1995); *Don King Prods. v. Douglas*, 742 F. Supp. 778, 780 (S.D.N.Y. 1990) (recognizing unconscionability as an affirmative defense under New York law); *Towner v. Towner*, 639 N.Y.S.2d 133, 134 (App. Div. 1996). A cause of action for unconscionability may not be used to seek affirmative relief. *See Galvin v. First Nat. Monetary Corp.*, 624 F. Supp. 154, 158 (E.D.N.Y. 1985) ("the doctrine of unconscionability is in the nature of an affirmative defense, and does not give rise to a cause of action"); *Super Glue Corp. v. Avis Rent A Car Sys., Inc.,* 132 A.D.2d 604, 606, 517 N.Y.S.2d 764 (App. Div. 1987) ("The doctrine of unconcsionability is to be used as a shield, not a sword, and may not be used as a basis for affirmative recovery."). In *Cowin Equip. Co., Inc. v. General Motors Corp.*, the Eleventh Circuit noted that:

> The equitable theory of unconscionability has never been utilized
> to allow for the affirmative recovery of money damages. The Court

13

> finds that neither the common law of Florida, nor that of any other state, empowers a court addressing allegations of unconscionability to do more than refuse *enforcement* of the unconscionable section or sections of the contract so as to avoid an unconscionable result.

734 F.2d 1581, 1582 (11th Cir. 1984) (quoting *Bennett v. Behring Corp.*, 466 F. Supp. 689, 700 (S.D. Fla. 1979)). Thus, Ng's attempt here to use the doctrine as a "sword" is improper as a matter of law.

Moreover, Ng's mortgage loan transactions do not meet the requirements for unconscionability under New York law, as explained below.

### B. Substantive and Procedural Unconscionability

Under New York law, a contract may be held invalid if it meets the standard for unconscionability – that is, if it "is so grossly unreasonable or unconscionable in the light of the mores and business practices of the time and place as to be unenforceable according to its literal terms." *Gillman v. Chase Manhattan Bank, N.A.*, 73 N.Y.2d 1, 10 (1988). For a contract to be held unconscionable, the party alleging the defect must generally show both substantive and procedural unconscionability. *See Naval v. HIP Network Servs. IPA, Inc.,* 620 F. Supp. 2d 566, 571 (S.D.N.Y. 2009) (citing cases); *Sands Bros. Venture Capital, LLC v. Burrs, Schoenberg & Walden, LLP*, No. 600411/10, 2010 WL 3619861, at *5 (N.Y. Sup. Ct. Sept. 14, 2010). The contract must unreasonably favor one party over the other and the process of contract formation must have deprived the disadvantaged party of meaningful choice. *See King v. Fox*, 7 N.Y.3d 181, 191 (2006) (citing *Gillman*, 73 N.Y.2d at 10).

#### 1. Procedural Unconscionability

As Judge Pohoreksly noted in his R&R:

> Notably the plaintiff has, other than using the conclusory words 'lack of meaningful choice', not alleged that he lacked a meaningful choice, nor has he made allegations with respect to his

14

> experience, education, or level of sophistication, other than stating he is 'unsophisticated consumers.' *See* Complaint ¶¶ 179, 188. While he alleges that the defendants intentionally misrepresented material information, he fails to disclose what that information was. *See* Complaint ¶ 180.

(R&R at 34.) This Court agrees. The contract formation process here lacks the hallmarks of procedural unconscionability. Though Ng broadly argues that there existed "high pressure commercial tactics, inequality of bargaining power, deceptive practices and language in contract, [and] an imbalance in the understanding and acumen of the parties," his papers are essentially bereft of admissible evidence supporting these allegations. Ng sought assistance from a Cantonese-speaking loan officer in the initial stages of his inquiry, and was represented by counsel of his choosing at the closing. (Defs.' 56.1 Stmt. ¶¶ 17, 18, 23; Defs.' Aff. re Mot. for Summ. J. Ex. 1 (Ng. Dep.), at 27.) He has admitted that he consulted with his attorney before signing loan documents at the closing, though he has questioned his attorney's quality. (Defs.' 56.1 Stmt. ¶ 33.) Though he has attempted, at the eleventh hour, to withdraw his admissions showing that he signed the documents in question, he has admitted nonetheless by deposition that he signed these documents in full awareness of their terms. (*Id*.) As he himself explained: "the only time we saw the $82,500 was five days before closing . . . ." (*Id*. ¶¶ 17, 18, 23; Ng. Dep. at 54.) For these reasons, Ng has failed to show procedural unconscionability.

   2. *Substantive Unconscionability*

Plaintiff has failed to put forward any evidence showing that the Second Mortgage is a contract "which no man in his senses and not under delusion would make." *Siemens*, 859 F. Supp. at 695. By their plain terms, and as Judge Pohorelsky correctly noted in his R&R, the terms of the Second Mortgage were both common and well below any applicable interest limitation. (R&R at 32.) Thus, the Second Mortgage is not substantively unconscionable.

15

Therefore, defendants' motion for summary judgment is GRANTED as to plaintiff's cause of action based on unconscionability.

## IV. TILA

Plaintiff in his complaint alleges that defendants violated two provisions of TILA: 15 U.S.C §§ 1635 and 1638. (*See* Compl. ¶¶ 65-78.) This Court dismissed plaintiff's claims based on 15 U.S.C. § 1635, but held that, to the extent plaintiff has expressly asserted causes of action based on other sections of TILA, such claims survived dismissal. For the reasons below, defendants' motion with respect to those surviving TILA claims are GRANTED IN PART AND DENIED IN PART.

A. Section 1638

The main purpose of TILA is "to assure meaningful disclosure of credit terms, avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices." *See McAnaney v. Astoria Fin. Corp.*, 357 F. Supp. 2d 578, 583 (E.D.N.Y. 2005) (internal citations omitted). "Failure to make a required disclosure and satisfy the Act may subject a lender to statutory and actual damages that are traceable to the lender's failure." *Id.*

As plaintiff himself admitted in his Memorandum in Opposition to the Motion for Summary Judgment, the Second Mortgage is a Home Equity Line of Credit ("HELOC"), and is an open-ended line of credit. *See Koons Buick Pontiac GMC, Inc. v. Nigh*, 543 U.S. 50, 64 n.10 (2004); *McAnaney v. Astoria Fin. Corp.*, No. 04-CV-1101 (JFB)(WDW), 2008 WL 222524, at *4 (E.D.N.Y. 2008); (Pl.'s Mem in Opp. to Summ. J. Mot. at 18; Liew Ex. D.) Section 1638 governs disclosure requirements for closed-ended lines of credit, and thus does not pertain to the

16

Second Mortgage. *See* §§ 1638(a) (requiring disclosures for closed-end credit plans), 1638(b) (governing GFEs for closed-end credit plans).

With respect to the First Mortgage, a closed-end line of credit, defendants have submitted evidence showing that they provided the required pre-closing disclosures, apparently signed by plaintiff. (Defs.' 56.1 Stmt. ¶¶ 12, 13, 24-29, 42-43; *see* Liew Decl.) The settlement agent that closed the Mortgages in question has declared that plaintiff received, reviewed, and signed all relevant disclosures. (*See* Liew Decl.) Plaintiff's deposition testimony and admissions likewise buttress defendants' contention that they made all disclosures required by TILA. (Defs.' 56.1 Stmt. ¶¶ 12, 13, 24-29, 42-43; *see* Liew Decl.)

Moreover, TILA recognizes that a presumption of delivery of required disclosures arises from a written acknowledgement of receipt by the recipient, such as that offered here. 15 U.S.C. § 1635(c). It is clear that a plaintiff's written acknowledgement of receipt of disclosure is not by itself conclusive, but creates a presumption of delivery. *See id.* ("Notwithstanding any rule of evidence, written acknowledgment of receipt of any disclosures required under this subchapter by a person to whom information, forms, and a statement is required to be given pursuant to this section *does no more than create a rebuttable presumption* of delivery thereof." (emphasis added)). To rebut this presumption, plaintiff must proffer evidence that he did not receive the disclosure. *See Williams v. First Gov't Mortg. & Investors Corp.*, 225 F.3d 738, 751 (D.C. Cir. 2000).

Plaintiff has offered no credible evidence to rebut this presumption. Instead, plaintiff has put forward denials of receipt that are utterly belied by the evidence.[6] In fact, his deposition testimony shows plaintiff's inability to discern whether he received the documents in question

---
[6] For example, though plaintiff argues, in his 56.1 Statement, that he did not receive the "Federal Truth-in-Lending Disclosure Statement," he stated in his deposition that "it is probable" that he received it, that he did not recall seeing it, and that he could not tell whether it was his signature on the document or not. (Ng Dep. at 46, 58-59.)

17

and whether or not the signature on those documents is in fact his own. (Ng. Dep. at 12, 13, 24-39, 42-43.) Plaintiff has offered not a scintilla of evidence to support his claim.[7]

In the alternative, plaintiff contends that the disclosure statements violate § 1638 on the ground that they were not delivered in the proper form, with proper statutory language, and at the proper time. Plaintiff has alleged that defendants failed to: (1) provide plaintiff with a statement notifying him of his right to receive an itemization of the amount financed, *see* § 1638(a)(2)(B); (2) include certain descriptive terms in the documents such as "finance charge," "annual percentage rate," "total of payments," and "total sale price," *see* § 1638(a)(8); (3) send a Good Faith Estimate ("GFE") within the three days of receipt of plaintiff's written application as required by statute, and to include a statement, as required by statute, that plaintiff was not required to complete the agreement "merely because you have received these disclosures or signed a loan application." §§ 1638(b).

In part, plaintiff's argument is wholly unsupported and is belied by the uncontroverted record showing that the necessary disclosures were made. Plaintiff was provided with an itemization of the amount financed for the First Morgage. (Liew Decl. Ex. K.) The uncontroverted record shows that the terms allegedly missing from the documents are actually accounted for, and are signed by plaintiff. (*See* Liew Decl. Ex. P, Q). However, plaintiff's claim relating to the GFE cannot be resolved on summary judgment. That form appears to have been signed by Ng in January, but lacks the statutory language described. (Liew Decl. Ex. H.) Plaintiff has raised a genuine issue of material fact with respect to the form and timing of the GFE disclosure. Thus, defendants' motion for summary judgment is DENIED as to plaintiff's cause of action based on 15 U.S.C. § 1638(b) with respect to the GFE disclosure.

---

[7] Indeed, plaintiff's contentions, set forward for the first time in his Opposition Memorandum, are not only meritless, but cite to portions of his 56.1 Statement that mischaracterize deposition testimony or fail to support his arguments.

18

B.  Section 1637

This Court previously held that "to the extent that [plaintiff] has expressly asserted TILA-specific (i.e., non-HOEPA) causes of action other than under § 1635, HSBC's motion [for judgment on the pleadings] is denied." (Doc. No. 79, at 2.) In opposition to defendants' motion, plaintiff for the first time alleges the violation of 15 U.S.C. § 1637(a), nowhere mentioned in the plaintiff's pleadings or in earlier motion practice, either by name or in content. Though plaintiff makes an attempt to show that § 1637 should be read into his Complaint, he does so by disingenuously quoting paragraphs that, in fact, support the argument against allowing the claim. Indeed, plaintiff claims that the phrase "defendants failed to deliver to the plaintiff accurately all material disclosures required by TILA" somehow allows all claims under TILA into the action. On the contrary, that phrase states that "defendants failed to deliver to the plaintiff accurately all material disclosures required by TILA *as described above*" and is found in paragraph 73 of the Complaint, not paragraph 59 as stated. "As described above" clearly relates to the TILA-related allegations already described, which state with particularity violations of §§ 1635 and 1638. Because plaintiff has provided no explanation whatsoever for failing to plead a violation of § 1637, and because a violation of that section is materially distinct from the other violations pleaded, defendants had no proper notice of this claim.

Therefore, defendants' motion is GRANTED with respect to any claim brought under § 1637, and it is DENIED with respect to the question of whether the GFE disclosure for the First Mortgage was made in the proper form and proper time as required by § 1638(b).

**V.     Individual Liability Of Defendant Wong**

The Court grants defendants' summary judgment claim as to individual defendant Wong. The only possible claim against him concerns the TILA claim under 15 U.S.C. § 1638, which by

definition deals with a lender's failure to disclose certain information prior to a transaction. Here, it is uncontested that plaintiff and Wong had no communication until after entering into the transactions at issue and that Wong played no role in the events leading up to the transaction. Thus, the defendants' motion for summary judgment as to individual defendant Wong is GRANTED.[8]

## **CONCLUSION**

For the reasons stated above, defendants' summary judgment motion is DENIED with respect to whether GFE disclosures were made in the proper form and proper time, as required by 15 U.S.C. § 1638(b), and GRANTED as to the remainder of plaintiff's claims. In addition, all claims against Defendant Wong are dismissed.

This matter is re-committed to the assigned Magistrate Judge for supervision of any settlement discussions, and all remaining pre-trial issues including the preparation of a Joint Pre-Trial Order consistent with this Memorandum and Order.

SO ORDERED.

Dated: Brooklyn, New York
August 10, 2011

*Roslynn R. Mauskopf*
_____
ROSLYNN R. MAUSKOPF
United States District Judge

---

[8] Neither party addresses whether the sole remaining claim lies against individual defendant Zhao.